Filed 3/9/22  P. v. Angeles CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MANUEL SILVA ANGELES,<br><br>Defendant and Appellant. | F079714<br><br>(Tulare Super. Ct.<br>No. TCM074428-01)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Jennifer Shirk, Judge.

Lisa Bertolino, Public Defender, Thomas McGuire, Assistant Public Defender, and Judyanne Rogado, Deputy Public Defender for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2001, appellant Manuel Silva Angeles (appellant) pleaded no contest to felony possession of cocaine (Health & Saf. Code, § 11550) and misdemeanor driving with a blood-alcohol content of 0.08 percent or greater (Veh. Code, § 23152, subd. (b)) and was placed on probation.

Appellant was not a citizen of the United States. At the time of his plea, according to postconviction declarations filed by his immigration attorney, appellant was "the derivative beneficiary" of a visa petition filed in 1992 by his father, and the petition had been "approved" but was "pending."

Appellant declared that he became the subject to removal proceedings in 2014. In 2018, appellant filed a motion to vacate his 2001 plea pursuant to Penal Code section 1473.7[1], a statute that was enacted in 2016 and became effective on January 1, 2017. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 861 (*Mejia*).) Section 1473.7 provides a basis for a noncitizen who is no longer in custody to move to vacate a conviction because of prejudicial error regarding adverse immigration consequences. If the court grants the motion, it shall permit the moving party to withdraw his plea. (§ 1473.7, subd. (e)(3).) Section 1473.7 applies retroactively and allows challenge to pleas and final convictions that occurred before the statute was effective. (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 309–310.) The initial version of section 1473.7 was interpreted to require the moving party to establish prejudicial ineffective assistance of counsel at the time of the plea under the standard of *Strickland v. Washington* (1984) 466 U.S. 668. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005 (*Camacho*); *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1063 (*Ruiz*).)

Appellant's section 1473.7 motion asserted the attorney who represented him at the plea hearing was prejudicially ineffective for failing to advise him that he was

---

[1] All further citations to "section 1473.7" are to the statute in the Penal Code.

pleading to an offense that would result in his mandatory deportation and essentially nullify his pending visa petition. The court denied the motion based on the transcript of the plea hearing and found appellant's postconviction declarations were not credible. It held the court discussed the immigration consequences with appellant and his attorney before it accepted his plea, and that discussion complied with section 1016.5. Appellant filed the instant appeal from that ruling.

**Amendment of Section 1473.7**

While this appeal was pending, the provisions of section 1473.7 were substantially amended, effective in 2019, to clarify the moving party is no longer required to establish ineffective assistance to obtain relief and vacate his conviction. Instead, the moving party must show by a preponderance of the evidence that his conviction "is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1437.7, subds. (a)(1), (e)(4); *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)

Both appellant and the People acknowledge the 2019 version of section 1473.7 applies to appellate review of the merits of appellant's section 1473.7 motion to vacate, and that appellant is no longer required to prove prejudicial ineffective assistance to obtain relief. (See, e.g., *Camacho, supra*, 32 Cal.App.5th at p. 1009; *Mejia*, *supra*, 36 Cal.App.5th at pp. 865–866, 871.)

**Appellate Issues**

In this appeal, appellant contends the court committed error when it denied his section 1473.7 motion for relief because he met his burden of proof as to both ineffective assistance as set forth in his motion, and the showing required by the 2019 amendments to section 1473.7 that he was not advised by either his attorney or the court that he faced mandatory deportation if he pleaded no contest to felony possession of cocaine, and the

failure to so advise was prejudicial because it affected his pending petition for lawful permanent resident status.

The People respond that appellant's motion was not meritorious under either ineffective assistance or the 2019 version of section 1473.7. The People assert that at the plea hearing in 2001, the court complied with section 1016.5 and advised appellant of the immigration consequences, and both appellant and his attorney stated they had discussed such consequences before he entered the plea. The People further assert that at the time of the plea, the court made implied factual findings that accepted the credibility of these statements from appellant and his attorney since the court accepted appellant's plea, and this court must defer to those factual findings and reject appellant's subsequent declarations filed in support of his postconviction motions to vacate.

We find that appellant met his burden of proving his own subjective error about the mandatory immigration consequences resulting from his plea to felony possession of cocaine, as required by the 2019 amendments to section 1473.7. (*Vivar, supra*, 11 Cal.5th at p. 529.) As to prejudice, we remand the matter for further appropriate proceedings for the superior court to address the nature and the status of visa petition filed by his father, and appellant's knowledge about the status of that petition, at the time of his plea in 2001.

### FACTS[2]

Around 9:00 p.m. on May 6, 2001, an officer with the California Highway Patrol responded to a dispatch about a solo vehicle spinout on southbound Highway 99 in Tulare. The officer arrived at the scene and spoke with appellant, who had been driving the vehicle. He detected a strong odor of alcohol from appellant's breath. The officer asked appellant if he consumed any alcohol. Appellant said he drank two or three beers between 3:00 p.m. and 6:00 p.m. Appellant failed field sobriety tests.

---

[2] Given appellant's plea, the only facts about the offenses in the appellate record are from the law enforcement reports, as summarized in the probation report.

4.

Appellant was arrested and gave breathalyzer tests that registered blood-alcohol levels of 0.22 and 0.21 percent. Appellant was searched and a small baggie with a white powdery substance was found in his front shirt pocket. The substance was later determined to be 0.25 grams of cocaine.

## PROCEDURAL BACKGROUND

### The Charges

On May 8, 2001, a felony complaint was filed in the Superior Court of Tulare County charging appellant with count 1, felony possession of a controlled substance, cocaine (Health & Saf. Code, § 11350, subd. (a)); count 2, misdemeanor driving under the influence of alcohol and drugs (Veh. Code, § 23152, subd. (a)); and count 3, misdemeanor driving with a blood-alcohol content of 0.08 percent or greater (Veh. Code, § 23152, subd. (b)). As to counts 2 and 3, it was alleged he had a blood-alcohol content of 0.20 percent and higher (Veh. Code, § 23578).

### The Plea Hearing[3]

On May 15, 2001, Judge Allen convened a hearing on appellant's case. Appellant was present and represented by David Rendahl, a deputy public defender.

According to the transcript, the parties stated that appellant was prepared to enter a plea, and they discussed possible dispositions with the court. Mr. Rendahl requested electronic monitoring in Los Angeles County. Ms. Price, the deputy district attorney, wanted pleas on all three counts, and said appellant's blood-alcohol level was 0.21 or 0.22 percent. The parties also discussed how much time he should serve.

Thereafter, the following exchange ensued:

> "THE COURT:     There might be only one problem though … *if he's an alien and not a citizen* and he's out on the electronic monitor you know Immigration and Naturalization *can snatch him up … off the street and deport him for this type of offense* even if he's on the electronic

---

[3] Appellant filed the reporter's transcript of the May 15, 2001, plea hearing as an exhibit in support of his 2014 motion to dismiss his convictions (§ 1385).

monitor because he's not in custody, physical custody.  I think you need to warn him that *if Immigration decided to, they could deport him, refuse him reentry or refuse him the right to become an American citizen because of this*.

"Mr. RENDAHL: *Yes, I did discuss that with him.*

"THE COURT: He understands *those possibilities*?

"[APPELLANT]: *Yes.*"[4] (Italics added.)

The court and the parties determined appellant's maximum exposure was three years.  The court advised appellant and obtained his waivers of his constitutional rights.

Appellant pleaded no contest to count 1, felony possession of cocaine, and count 3, misdemeanor driving with a blood-alcohol content greater than 0.08 percent; and admitted the allegation that he had a blood-alcohol content of 0.20 percent and higher. The court granted the People's motion to dismiss count 2.  The parties stipulated to a factual basis.

---

[4] As will be discussed, *post*, section 1016.5 "requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense *may result* in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.  [Citation.]" (*People v. Martinez* (2013) 57 Cal.4th 555, 558, italics added, fn. omitted.)  Section 1016.5 only requires the court to advise of possible and not mandatory immigration consequences.  (*Ibid*.)

"[A] validly executed waiver form is a proper substitute for verbal admonishment by the trial court.  [Citation.]" (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 521.)  As we will also discuss, *post*, the California Supreme Court recently held that in determining the merits of a section 1473.7 motion to vacate, a section 1016.5 advisement on a plea form may be insufficient to mitigate the prejudice from the defendant's erroneous beliefs about the impact of his plea on mandatory immigration consequences, since the statutory advisement states that deportation is *a possibility*.  (*Vivar, supra*, 11 Cal.5th at p. 533.)

The court's exchange with appellant and his attorney, quoted above, is the only evidence in the record about the section 1016.5 advisements in this case.  The instant record does not include a change-of-plea form or any document signed by appellant that contained the section 1016.5 advisement.

The court referred the matter to the probation department for a determination of whether to place appellant on felony probation. Defense counsel said appellant decided he would serve "the straight time here" and not go on electronic monitoring.

**Sentencing**

On August 7, 2001, the court held the sentencing hearing. Appellant was present with a different public defender. The court placed appellant on probation for three years subject to certain terms and conditions.

**Probation Violation**

On April 21, 2004, appellant appeared at a probation violation hearing with another deputy public defender and was assisted by an interpreter. Appellant admitted the allegations that he violated probation because he failed to make required payments of fines and fees, report to the probation officer, submit to testing, attend substance abuse counseling, register as a narcotics offender, and a new arrest for driving under the influence. The court reinstated him on probation, extended the period for two more years, and ordered him to serve 90 days in jail.

## MOTION TO DISMISS (§ 1385)

On January 8, 2014, appellant, represented by retained counsel Anthony Pullara, filed a motion to dismiss his 2001 convictions for felony possession of cocaine and misdemeanor driving under the influence in furtherance of justice pursuant to section 1385.

**Appellant's Declaration**

Appellant's motion was supported by his sworn declaration, that he was "currently in removal proceedings before the United States Immigration Court," and that his current immigration attorney, Katherine Lewis, told him that "if I had not admitted to violating probation, I would be eligible to adjust status (get a green card) and I would be eligible for relief from deportation."

7.

Appellant declared that a visa petition had filed by his father on his behalf, and it was pending at the time of his plea:

> "When I admitted to violating probation, my immigration status was already extremely important because I had been living in the United States for 11 years and I had every intention of remaining in the U.S. and eventually become a citizen.
>
> "I immigrated to the United States with my entire family. When we left Mexico, my father was a permanent legal resident (green card holder). My intention was to eventually become a United States citizen in the same fashion that my father became a citizen years later. *In fact, my father, who already had his green card, filed a visa petition on my behalf in 1992. However, there was a long wait time for visas filed by lawful permanent resident parents on behalf of their adult children from Mexico.*
>
> "If I had understood that I was giving up all possible immigration remedies by admitting to violating probation, I would not have admitted. I would have fought the case through the hearing and would have requested for my attorney to try to negotiate a modification of probation with additional punishments without having to admit the violation." (Italics added.)

Appellant declared he came to the United States in search of a better life. He was married to a citizen, and they had two children who were also citizens. He had been employed for the past three years by a company as a pipelayer and was the main source of income for his family.

**Ms. Lewis's Declaration**

Appellant's motion was supported by a sworn declaration from Katherine Lewis, appellant's immigration attorney. She did not represent him at the time of his plea, and he retained her when he filed his postjudgment motions for relief.

Ms. Lewis stated that appellant was 37 years old, and his felony conviction for possession of cocaine was considered "a controlled substance offense" under federal immigration law. As a result of his conviction and probation violation, appellant was deportable and inadmissible to the United States, he was unable to adjust his status of

being a lawful permanent resident even though he was married to a citizen, and he was ineligible for cancellation of his removal.[5]

> "If [appellant] had not admitted to violating probation and expunged his case, his conviction would not have rendered him ineligible for nearly all relief under immigration law. But for this conviction, he would have been eligible to adjust [his] status … and thus would be able to prevent deportation. However, there is no waiver available for his conviction and, therefore, he is barred from ever obtaining lawful permanent resident status and if he is deported, he will never be permitted to immigrate to the United States."

**The People's Opposition**

On January 21, 2014, the district attorney filed opposition, and stated that since the grant of probation in this case in 2001, appellant was arrested in 2003 for driving under the influence and placed on probation for four years. In April 2004, he was arrested on a bench warrant in the instant case, admitted violating probation, his probation was reinstated and extended for two years, and he was sentenced to 90 days in jail. In August 2012, he was arrested for driving under the influence, and again placed on probation for four years.

The People argued appellant was properly advised at the plea hearing as required by section 1016.5 that he could be deported as a result of his plea to felony possession of cocaine, and it was a controlled substance offense that made him subject to mandatory deportation under federal law, regardless of the probation violation.

**The Court's Denial of the Motion**

On January 24, 2014, the superior court held a hearing on the motion. Appellant was present with counsel. The court accepted the prosecution's opposition, it did not

---

[5] A subsequent declaration filed by Ms. Lewis stated appellant was married in 2005, after his plea in this case. The existence of the visa petition filed by his wife is irrelevant to the question raised by his section 1473.7 motion – his subjective knowledge about the nature and the circumstances of his plea in 2001.

hear any evidence, and it took the motion under consideration. On March 3, 2014, the court declined to exercise its discretion and denied defendant's motion to dismiss.

## MOTION TO VACATE (§ 1016.5)

On May 8, 2015, appellant filed a motion to vacate his 2001 convictions pursuant to section 1016.5. Appellant was represented by a new retained counsel, Daniel Prado. Appellant's motion asserted the court failed to advise him of any possible immigration consequences prior to entering his plea, as required by section 1016.5.[6]

> "[Appellant] was not advised by the court of potential immigration consequences at the time that he entered his plea of no contest. [Appellant] does not recall signing a change of plea form wherein immigration consequences were mentioned or explained to him. [Appellant] does not recall that his attorney ever mentioned the possibility that [he] could be deported or excluded from admission, or denied naturalization due to the guilty plea. As stated above, had the issue been raised, [appellant] would have informed his attorney that he currently had an approved visa petition that had been filed by his father, and that remaining eligible to apply for lawful permanent resident status was of utmost importance.
>
> "Moreover, as there is no change of plea form in the court file that [appellant] was properly advised, he is presumed not to have received the required advisement."[7] (Italics and bold omitted.)

---

[6] If the court fails to give the section 1016.5 advisement during a plea hearing, "and the defendant shows that conviction of the offense to which he or she pleaded guilty or nolo contendere *may result* in adverse immigration consequences, the court, on the defendant's motion, is required to vacate the judgment and permit the defendant to withdraw his or her plea and enter a plea of not guilty. [Citation.] Relief will be granted, however, only if the defendant establishes prejudice. [Citation.]" (*People v. Martinez, supra*, 57 Cal.4th at pp. 558–559, italics added.)

[7] As noted above, the section 1385 motion to dismiss was filed in 2014 by appellant's retained counsel, Mr. Pullara, and supported by the reporter's transcript of appellant's plea hearing. The motion acknowledged the court's comments at the plea hearing about the possible immigration consequences, and argued the court failed to advise appellant that he was going to be subject to mandatory deportation as a result of the plea.

The section 1016.5 motion to vacate was filed in 2015 by a different retained attorney, Mr. Prado. The entirety of the motion and supporting declarations strongly imply that counsel either was unaware, or did not have, the reporter's transcript of

10.

Appellant asserted his trial attorney was prejudicially ineffective because he failed to advise appellant of the mandatory deportation consequences of his plea as required by *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), counsel failed to negotiate a plea that would not result in his mandatory deportation, and he did not recall the court giving him the proper advisement of immigration consequences of his plea as required by section 1016.5.

**Appellant's Supporting Declaration**

Appellant filed a supporting declaration and stated that at the time of his plea, his attorney told him not to fight the case "because there was a chance that I could lose the case. I was told that I should pled [*sic*] no contest so that there would be no change of losing and getting more time. So I did as I was instructed and pled no contest."

> "*I did not know and was not informed that my conviction would cause me to be deported*. My attorney did not mention anything about immigration and what would happen to my status by pleading no contest. My attorney and I did not consider my immigration status and the effects of my convictions because my attorney and I never talked about it. *If we had had a discussion about the immigration consequences of the conviction I would have informed him that I currently had an approved visa petition filed by my lawful permanent resident father that I planned to use to apply for lawful permanent resident status in the future*. However, no such discussion was had." (Italics added.)

Appellant declared he did not remember reviewing or signing a form that explained the immigration consequences of his plea, or the effect the plea would have on the petition that his father filed on his behalf. Appellant further declared he pleaded no contest because his attorney told him to do it. He would not have entered the plea if he had known of the "horrible immigration consequences" that resulted, requiring his deportation and preventing him from returning to the United States and becoming a

---

appellant's plea hearing, because of the allegations that the court never gave any immigration advisements prior to the plea. As will be seen, however, the People and the court reviewed the plea transcript in addressing the merits of appellant's motion.

lawful permanent resident or citizen. "I thought that this conviction had no effect on my immigration status." If he had known, he would not have entered the plea and "would have fought the case like I really wanted to but for my attorney's advice that I not."

**Ms. Lewis's Declaration**

Ms. Lewis, appellant's immigration attorney, again filed a sworn declaration and stated appellant had lived in the United States for over two decades and was currently in removal proceedings. She declared appellant was "the derivative beneficiary" of a visa petition filed on May 21, 1992, by his father, who was a lawful permanent resident at the time.

Ms. Lewis declared that any controlled substance violation, except for possession of 30 grams or less of marijuana for personal use, rendered a noncitizen deportable and inadmissible under federal immigration law. "Any individual applying to adjust his status to that of a lawful permanent resident must demonstrate that he is admissible to the United States." It would have been advisable for appellant to plead to a different penal violation to avoid these harsh immigration consequences.

Ms. Lewis declared that if she had represented appellant, she would have advised him not to plead to possession of cocaine because it was a deportable offense with virtually no form of relief available to a noncitizen.

> "This [was] particularly relevant and critical in [appellant's] case, because even at the time that he entered the plea, he had an approved visa petition filed by his then-lawful permanent resident father, which had already been pending for almost 10 years and would have rendered him eligible to apply for lawful permanent resident status as soon as the priority date become current, so long as he was not inadmissible."

Ms. Lewis declared that any reasonably competent attorney representing a noncitizen would have known that a controlled substance offense "would likely constitute a removable offender and that such a conviction would render a noncitizen ineligible for virtually all forms of relief that would otherwise have been available. *At the time that*

12.

*[appellant] plead [sic] he had an approved visa petition filed by his father,* so it would have been foreseeable that he would [have] an avenue to apply for lawful permanent resident status in the near future, and thus, was critical that his lawyer explain the very tangible collateral consequences."

**The People's Opposition**

On May 14, 2015, the district attorney filed opposition, and agreed that appellant's plea made him subject to deportation. The district attorney asserted the court advised appellant of the immigration consequences as required by section 1016.5 when he entered his plea, his attorney stated at the plea hearing that appellant had been so advised, and appellant pleaded to a controlled substance offense that made him deportable. The People further asserted the ineffective assistance standards set forth in *Padilla* in 2010 were not retroactive and inapplicable to appellant's plea hearing in 2001.

**The Court's Hearing**

On May 20, 2015, the court held a hearing on appellant's motion and heard arguments from the parties; no evidence was taken. Appellant was not present but represented by his attorney, Mr. Prado.

Appellant's counsel argued there was no evidence appellant's attorney at the plea hearing in 2001 knew about appellant's immigration status, that he had a petition pending before immigration court filed by his father, or the impact of his plea on that pending petition. The prosecutor replied that the transcript of the plea hearing showed that appellant and his attorney discussed the immigration consequences of his plea.

The court denied the motion based on the plea transcript:

> "[B]ased on the statement that the judge had made previously [at the plea hearing] describing the different ways that he could be picked up and taken into custody and then [appellant's] response after Mr. Rendahl indicated that he had discussed the citizenship and the immigration ramifications with him that [appellant] then spoke up and indicated that he did, in fact, understood those …."

13.

## MOTION TO RECLASSIFY FELONY CONVICTION

In June and August 2015, appellant, represented by Mr. Prado, filed a petition to reclassify his felony conviction to a misdemeanor. In response, the People asserted appellant was ineligible for relief because he had a disqualifying felony conviction. The court denied the petition, presumably because of the alleged disqualifying conviction.

**The Court's Decision to Grant the Renewed Motion**

On June 7, 2016, appellant, again represented by Mr. Prado, filed another motion to reclassify his conviction for possession of cocaine from a felony to a misdemeanor pursuant to Proposition 47 and section 1170.18.

On July 7, 2016, the court held a hearing on the motion. Appellant was not present but represented by Mr. Prado. Appellant's attorney stated his previous motion to reclassify had been denied because the prosecutor erroneously believed appellant had a disqualifying prior felony conviction. Appellant's attorney stated the conviction was for someone with the same name but a different birthdate. The prosecutor did not oppose the motion and agreed that appellant did not suffer a disqualifying conviction.

The court granted appellant's motion and reduced appellant's conviction from felony to misdemeanor possession of cocaine, pursuant to section 1170.18 and Proposition 47.

## MOTION FOR DISMISSAL/EXPUNGEMENT (§ 1203.4)

On June 9, 2017, appellant, again represented by Mr. Prado, filed a petition for dismissal and expungement of his misdemeanor convictions for possession of cocaine and driving with a blood-alcohol content of 0.08 percent or greater, pursuant to section 1203.4, because he had successfully completed probation.

On June 30, 2017, the People filed opposition and asserted that appellant was ineligible for relief because he had a disqualifying conviction for commission of a lewd act with a child under the age of 14 years (§ 288, subd. (a)) in 2008.

14.

On August 1, 2017, the court held a hearing on the motion. The prosecutor withdrew its prior opposition and stated that it no longer opposed the motion.[8] The court granted appellant's motion to expunge and dismiss both misdemeanor convictions.[9]

## ENACTMENT OF SECTION 1473.7

In 2017, section 1473.7 became effective and provided that a person no longer imprisoned or restrained may file a motion to vacate a conviction for the following reason:

> "The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (Former § 1473.7, subd. (a)(1); Stats.2016, c. 739 (A.B. 813), § 1, eff. Jan. 1, 2017.)[10]

All section 1473.7 motions are entitled to a hearing. In ruling on the motion, the court shall specify the basis for its conclusion. It "shall grant the motion … if the moving party establishes, by a preponderance of the evidence, the existence of any grounds for relief specified in subdivision (a)." (Former § 1473.7, subds. (d), (e).)

As relevant to the grounds stated in subdivision (a)(1), "… California courts uniformly assumed … that moving parties who claim prejudicial error was caused by having received erroneous or inadequate information from counsel, must demonstrate *that counsel's performance fell below an objective standard of reasonableness under prevailing norms, as well as a reasonable probability of a different outcome if counsel had rendered effective assistance*. Those courts either expressly or impliedly followed

---

[8] The record suggests the prosecution withdrew its initial opposition based on the determination that appellant did not have a disqualifying conviction.

[9] After 2011, the dismissal and expungement for rehabilitation purposes under section 1203.4 of a conviction for simple possession, as an offense relating to a controlled substance, has no effect on the federal immigration consequences of that conviction. (*Nunez-Reyes v. Holder* (2011) 646 F.3d 684, 689–690, 692–694.)

[10] The second statutory basis for a motion to vacate, contained in both the 2017 and 2019 versions of the statute, is not raised in this case – that there was "[n]ewly discovered evidence of actual innocence…." (§ 1473.7, subd. (a)(2).)

15.

the guidelines enunciated" in *Strickland v. Washington, supra*, 466 U.S. 668. (*Camacho, supra*, 32 Cal.App.5th at p. 1005, italics added.) Thus, the moving party who brought a motion to vacate under the 2017 version of section 1473.7, subdivision (a) was required to prove a claim of prejudicial ineffective assistance of counsel. (*Mejia, supra,* 36 Cal.App.5th at p. 861.)

## APPELLANT'S SECTION 1473.7 MOTION TO VACATE

This appeal is based on appellant's motion to vacate filed on January 23, 2018, by Judyanne Rogado, a senior deputy public defender. Appellant's motion asserted his 2001 plea to possession of cocaine should be vacated, based on the court's alleged violation of section 1016.5 at the plea hearing, and the 2017 version of section 1473.7 and ineffective assistance of counsel under the Sixth and Fourteenth Amendments.

Appellant's motion restated the arguments raised in his prior motions for relief – he was placed in removal proceedings and faced deportation because he pleaded to a controlled substance offense in 2001, he subsequently consulted an immigration attorney and learned about the specific immigration consequences resulting from his plea to felony possession of cocaine, and that it was a controlled substance offense under federal immigration law that subjected appellant to mandatory removal, and he was inadmissible to return and ineligible to obtain lawful permanent resident status.

Appellant argued his section 1473.7 motion should be granted and his attorney at the plea hearing in 2001 was prejudicially ineffective because he failed to advise him that his conviction for felony possession of cocaine would result in his mandatory deportation and make him ineligible for the approved visa petition submitted on his behalf by his father. Appellant argued that under *Padilla*, an attorney's general advisement about possible immigration consequences was insufficient to satisfy the duty to fully advise about mandatory removal.

> "[Appellant] did not get advisement by the Court, by his defense counsel or
> by the court interpreter of the specific immigration consequences to his

16.

particular plea. In fact, had the issue been brought to his attention, [appellant] would have informed his attorney that the aforementioned visa petition had been filed on his behalf and he therefore had a viable means to apply for lawful permanent resident status. He does not recall signing a plea form, which discussed immigration effects and consequences to his plea of no contest. [Appellant] felt pressured by this counsel to enter a guilty plea because he was faced with a possible lengthy jail term. [Appellant] was informed that if he did not plead no contest the consequences would be significantly worse."

Appellant asserts his attorney's error was prejudicial because it was reasonably probable that he would not have pleaded to the controlled substance offense, and instead would have risked going to trial, if he knew that he would become ineligible for immigration relief.[11]

---

[11] As we will discuss below, we need not address appellant's renewed claims of ineffective assistance in this appeal. Even if we did, however, appellant relies on a series of cases that are not applicable to the circumstances of his case. First, *Padilla, supra,* 559 U.S. at p. 368 held the Sixth Amendment's guarantee of effective counsel requires attorneys to advise clients if their guilty plea would make them "subject to automatic deportation," and an attorney is ineffective in failing to so advise. (*Id.* at pp. 357, 364, 374.) As noted by the district attorney, the rule announced in *Padilla* does not apply retroactively to convictions that were final at the time *Padilla* was decided in 2010. (*Chaidez v. United States* (2013) 568 U.S. 342, 344, 357–358; *Camacho, supra,* 32 Cal.App.5th at pp. 1004–1005 & fn. 4.) As a result, *Padilla*'s ineffective assistance standard was not applicable when appellant entered his plea in 2001.

In subsequent briefing, appellant acknowledged *Padilla* was not retroactive but instead relied on several state cases to argue counsel was required to affirmatively advise him about the mandatory immigration consequences at the time of his plea in 2001, even before *Padilla* was decided. These cases are also inapplicable to the circumstances of his plea. *In re Resendiz* (2001) 25 Cal.4th 230 held that "affirmative misadvice regarding immigration consequences may, depending on the circumstances of the particular case, constitute ineffective assistance of counsel" (*id.* at pp. 235, 240), but expressly declined to address "whether a mere failure to advise could also constitute ineffective assistance" or whether defense counsel was obligated to research immigration consequences but doubted the Sixth Amendment imposed "a blanket obligation on defense counsel, when advising pleading defendants, to investigate immigration consequences or research immigration law." (*Id.* at pp. 240, 249–250.) There is no evidence that appellant received "affirmative misadvice" from his attorney before he entered his plea. (Cf. *People v. Espinoza* (2018) 27 Cal.App.5th 908, 911–918, [defendant entered plea in 2012, when *Padilla* was effective, and counsel's warning of possible immigration

Appellant further argued that in addition to his attorney failing to research or advise him about the specific immigration consequences, the court failed to comply with section 1016.5 and did not properly advise him of the severe immigration consequences prior to entering his plea to a controlled substance offense.

**Appellant's Declaration**

Appellant filed a sworn declaration that he had lived in the United States since 1996, he married a citizen in 2005, they had two children who were also citizens, and his "whole life is here."  His father had become a citizen and his mother was a lawful permanent resident.

Appellant's declaration stated Mr. Rendahl, his attorney at the plea hearing told him not to fight the case because there was a chance that he could lose, and he did as he was instructed.  Appellant declared that he did not remember seeing, reviewing, or signing a form that explained the immigration consequences of his plea.[12]

> "I did not know and was not informed that my conviction would cause me to be deportable and would render me ineligible to apply for a lawful permanent resident status.  I do not recall my attorney telling me that there would be any immigration impact due to my conviction.  If we had had a discussion about the specific immigration consequences of the conviction, *I would have informed him that I currently had an approved visa petition filed by my lawful permanent resident father that I planned to use to apply*

---

consequences was constitutionally inadequate since he was subject to mandatory removal].)

In *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1481–1482, and *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76–77, the defense attorneys were found prejudicially ineffective for giving erroneous information in response to their clients' repeated and specific questions about the impact of their pleas on their immigration status.  In this case, there is no evidence appellant asked any of his attorneys, prior to the plea, about the immigration consequences.  (Cf. *People v. Barocio* (1989) 216 Cal.App.3d 99, 107–108 [trial court required to give section 1016.5 at plea hearing, but defense attorney not required to give section 1016.5 advisement to client because immigration concerns were "collateral consequence[s]" of the plea].)

[12] As previously noted, the instant record does not contain a change-of-plea form or any written document stating the section 1016.5 immigration advisement.

18.

*for lawful permanent resident status in the future.* I understand from my current criminal defense attorney that my prior attorney, Mr. Rendahl discussed immigration issues generally with the judge in 2001 and Mr. Rendahl said he discussed this with me. *While I do not have a recollection of any discussions with Mr. Rendahl regarding immigration consequences of my plea, if he did tell me anything, it must have been something very generic. I am sure he did not tell me the specific consequences of the plea. If he had explained the plea would make me ineligible for lawful permanent resident status, which I planned to pursue through the petition my father filed, I would have not taken the plea.*" (Italics added.)

Appellant declared he had no memory of the judge discussing immigration consequences at the time of his plea hearing. His current attorney showed him the transcript from the plea hearing, and appellant assumed he "didn't want to contradict my attorney in court about the fact that he didn't discuss the immigration consequences or that my attorney would have told me if there had been some specific immigration consequence that was applicable to my plea. Had I understood that the plea would make me ineligible to apply for lawful permanent resident status, I would certainly have asked more questions and explained my father had petitioned for me. I would not have taken the plea if I understood it made me ineligible for lawful permanent resident status."

Appellant's motion was also supported by a declaration from his employment supervisor, that appellant had worked for the same construction company for five years, and he was hardworking, reliable, and responsible; and declarations from other family members, that he was the main source of their income. He had attended classes on drug/alcohol problems, and his counselor declared he was an "exceptional" group member.

**Ms. Lewis's Declaration**

Ms. Lewis, appellant's immigration attorney, filed another supporting declaration and stated appellant was now 41 years old. She again declared that at the time of his plea, appellant was "the derivative beneficiary" of a visa petition filed on May 21, 1992,

19.

by his father, who was a lawful permanent resident of the United States at that time, and now was a citizen.

> "[A]t the time he entered the plea, [appellant] had an approved visa petition filed by his then-lawful permanent resident father, which had already been pending for almost 10 years and would have rendered him eligible for lawful permanent resident status *as soon as the priority date become current, so long as he was not inadmissible.*"  (Italics added.)

According to her declaration, a reasonably competent attorney would have known that a controlled substance offense was a removable offense and left him ineligible "for virtually all forms of relief that would otherwise have been available."

> "At the time that [appellant] ple[d], he had an approved visa petition filed by his father, so it would have been foreseeable that he would an avenue to apply for lawful permanent resident status in the near future, and thus, was critical that his lawyer explain the very tangible collateral consequences."

Ms. Lewis declared appellant's attorney should have explored alternate pleas without the same immigration consequences, such as being accessory to simple possession, or hit and run.

> "[Appellant] is currently in removal proceedings before the San Francisco Immigration Court, and is facing a very real possibility of a removal order from the United States.  Because of this conviction, the Immigration Judge found appellant inadmissible [under federal immigration law] for a controlled substance offense violation, and ineligible for adjustment of status to that of a lawful permanent resident (obtain his 'green card') based on his marriage to a U.S. citizen …, relief for which he otherwise is eligible.  In addition, because of his conviction, he is not eligible for cancellation of removal …, relief for which he would be otherwise eligible. [¶]  The actual immigration consequences of [appellant's] conviction are that he is unable to seek almost any relief from removal in immigration court."

**The People's Opposition**

On February 13, 2018, the district attorney filed opposition and, as in prior pleadings, agreed that appellant's plea made him subject to deportation.  The district

20.

attorney argued the court gave appellant the appropriate immigration advisement as required by section 1016.5 at the time of the plea hearing, possession of cocaine is a deportable offense under federal immigration law, and he knowingly accepted the consequences of his conviction when he entered his plea.

As for his ineffective assistance claim, the People stated the standard set forth in *Padilla* in 2010 was not retroactive to pleas and convictions entered prior to the decision in that case, and appellant failed to provide any evidence of ineffective assistance because he "was advised by the court and by Mr. Rendahl [his attorney at the plea hearing] that his pleas *may result* in deportation consequences."[13]  (Italics added.)

**The Court's Denial of the Motion**

On March 6, 2018, the court held a hearing on appellant's section 1473.7 motion to vacate.  Appellant was present with his attorney, Ms. Rogado, and assisted by an interpreter.

Appellant's counsel argued the same equities which led the court to grant the section 1203.4 motion to expunge his convictions should also support the section 1473.7 motion to vacate.  Appellant's counsel acknowledged there was a discussion about immigration consequences at the plea hearing, but argued the court only addressed the possibility of deportation and did not state that appellant was pleading to an offense that was going to result in his mandatory deportation, and appellant's attorney failed to so advise him prior to entering the plea.

The court denied appellant's motion without prejudice and found the plea transcript showed that appellant was advised about the immigration consequences, and

---

[13] The People's opposition again claimed that appellant was convicted of child molestation in 2008 and sentenced to prison.  In reply, Ms. Lewis filed a new declaration and stated she reviewed appellant's criminal records and documents from the FBI, he was never convicted of such an offense or ordered to register as a sex offender, and federal immigration authorities had not alleged such a conviction in the course of the pending removal proceedings.  The People did not contest this declaration.

his attorney at that hearing acknowledged they had discussed the subject. "If you have a declaration from Mr. Rendell [*sic*] that he misunderstood the law or that he failed to advise his client of the consequences … [t]hat would put it in a different position. But based on the evidence that's been presented, your motion is denied."

### ADDITIONAL PROCEEDINGS ON THE SECTION 1473.7 MOTION

On May 15, 2018, appellant filed a declaration from David Rendahl, the attorney who represented him at the plea hearing, and requested the court reconsider its denial of his section 1473.7 motion.

**Mr. Rendahl's Declaration**

Mr. Rendahl declared he represented appellant as a deputy public defender at the plea hearing in 2001, but he did not have any independent recollection of his case. His representation occurred before the United States Supreme Court's ruling in *Padilla* in 2010, about the standards of representation.

> "In 2001, the usual advisement I gave to clients would be to advise them that their plea may have immigration consequences and this case can cause you to be deported, however it is unknown if you will actually be deported.
>
> "At the time, it was my practice to provide clients with the immigration consequences of their plea in relation to their status that they informed me of, i.e., totally undocumented up to a resident alien with green card *and in the process of seeking to legally stay in this country and seek to be a citizen.*
>
> "Since I have no independent recollection of my specific conversations with [appellant] or the information he provided me at the time, I don't know the extent of the actual advisement I gave [appellant] of the immigration consequences of his plea." (Italics added.)

**The Court's Second Hearing on the Section 1473.7 Motion**

On July 2, 2018, the court held a hearing to reconsider appellant's motion based on Mr. Rendahl's declaration. Appellant was present with his attorney, Ms. Rogado, and assisted by an interpreter. No witnesses appeared, and the court heard the parties' arguments on appellant's renewed ineffective assistance claim.

22.

Appellant's counsel argued that Mr. Rendahl's declaration showed that in 2001, "he would tell clients it's unknown if they will actually be deported." Appellant's counsel argued that it was a certainty that a plea to a controlled substance offense in 2001 would result in his mandatory removal, deportation, and exclusion. Counsel stated that if the court granted the motion to vacate, appellant was prepared to enter a plea to "something other than what he had originally pled to."

The prosecutor replied that the rest of Mr. Rendahl's declaration showed it was also his practice to tell clients about the immigration consequences of their plea "*in relation to what they told him*." (Italics added.) The prosecutor argued that the entirety of Mr. Rendahl's declaration, together with the statements from Mr. Rendahl and appellant at the plea hearing that they had discussed the immigration consequences of the plea, showed appellant was fully advised before he entered his plea.

Appellant's counsel replied that it was unreasonable to expect appellant would have entered the plea if his attorney told him that he would be deported if he pleaded to the charge, which would have been the proper advice since he was pleading to a controlled substance offense under federal law. Counsel further argued it was not clear whether Mr. Rendahl knew about appellant's immigration status at the time of the hearing, or the consequences of admitting a controlled substance offense. "It would be different if the transcript read, '[appellant] informed me of his status, which was XYZ. I have informed him, therefore, that if he pleads to this charge, he will therefore be deported.' [W]ith that specificity, you can rely more sufficiently on the transcript…." The court took the matter under submission.

**The Court's Denial of the Motion**

On July 3, 2018, the court filed a written order and again denied appellant's section 1473.7 motion to vacate based on his claim of ineffective assistance. The court set forth the lengthy history of the case and noted appellant's prior motions for relief

23.

were denied, except the motions to reclassify and expunge.  The court cited the transcript of the plea hearing:

> "The record reflects that the Court asked the Public Defender and [appellant] if [appellant] had been advised of the immigration consequences.  At that time, Mr. Rendahl represented that he advised him of the immigration consequences.  [Appellant] also responded to the Court that he was aware of the immigration consequences."

The court found Mr. Rendahl's recent declaration "indicates that he does not recall this specific case, but that his usual practice was to advise defendants that their plea can have immigration consequences, but that it was unknown if they actually would be deported."

The court rejected the credibility of appellant's declaration filed in support of his section 1473.7 motion, and found it was inconsistent with the declaration he filed in 2015, in support of his section 1016.5 motion to dismiss:

> "[Appellant] filed a declaration dated April 30, 2015, stating[,] 'My attorney did not mention anything about immigration and what would happen to my status by pleading no contest.  My attorney and I did not consider my immigration status and the effects of my convictions because my attorney and I never talked about it.'  Based on the transcripts and declaration of Mr. Rendahl, submitted in conjunction with the current motion, the court finds that the [appellant] was *less than candid in that [2015] declaration*.  [¶]  Although the Court is sympathetic to the [appellant's] situation, the Court cannot find that the law or evidence presented supports the [appellant's] request."  (Italics added.)

Thereafter, appellant filed the instant appeal from the trial court's denial of his section 1473.7 motion for relief.[14]

---

[14] Appellant initially filed a timely notice of misdemeanor appeal with the appellate division of superior court, but it was dismissed for lack of jurisdiction because appellant's original conviction was for a felony.

On February 4, 2019, appellant attempted to file a felony notice of appeal with the Tulare County Superior Court, but the clerk declined to file the notice as untimely.  This court granted appellant's petition for writ of mandate for leave to file a belated notice of appeal of this matter under the doctrine of constructive filing.

## THE 2019 AMENDMENTS TO SECTION 1473.7

In 2018, while this appeal was pending, the Legislature amended section 1473.7, effective on January 1, 2019. (*Mejia, supra*, 36 Cal.App.5th at p. 869; Stats. 2018, c. 825, § 2 (A.B. 2867).) "The California Legislature knew defendants … had been misadvised on immigration consequences, yet they were losing section 1473.7 motions to vacate convictions in 2017 and 2018. The Legislature passed Assembly Bill No. 2867 (2017–2018 Reg. Sess.) to 'provide clarification to the courts regarding Section 1473.7' to 'ensure uniformity throughout the state and efficiency in the statute's implementation.' [Citation.] It intended to change the law to give defendants a *new right* to prevail using an easier new standard to retroactively challenge invalid prior convictions. [Citations.]" (*Ruiz, supra*, 49 Cal.App.5th at p. 1067.)

Subdivision (a)(1) of section 1473.7 was amended in 2019 to clarify that a motion to vacate is no longer subject to an ineffective assistance analysis:

> "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. *A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel.*" (§ 1473.7, subd. (a)(1), italics added.)[15]

The 2019 legislation again stated that the court shall grant the motion if the moving party establishes, by a preponderance of the evidence, the existence of any ground for relief specified in subdivision (a). (§ 1473.7, subd. (e)(1).) The Legislature also clarified exactly what the court was required to find for a motion brought under subdivision (a)(1):

---

[15] The 2019 amendments restated the second basis for a motion to vacate, based on newly discovered evidence of actual innocence. (§ 1437.7, subd. (a)(2).) Section 1473.7, subdivision (a) was again amended, effective January 1, 2021, to include a third statutory basis for a motion to vacate that is not at issue in this case – that a conviction or sentence was "sought, obtained, or imposed on the basis of race, ethnicity, or national origin …." (§ 1473.7, subd. (a)–(e); Stats. 2020, c. 317, § 5.)

25.

"When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to *prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere….*" (§ 1473.7, subd. (e)(4), italics added.)

As a result of the 2019 legislation, the amended version of section 1473.7, subdivision (a)(1) "eliminated the *Strickland* requirements. [Citation.] Now the trial court may set aside a conviction based on counsel's immigration advisement errors without a 'finding of ineffective assistance of counsel.' [Citation.]" (*Ruiz, supra*, 49 Cal.App.5th at p. 1067; *Vivar, supra,* 11 Cal.5th at p. 523.) The 2019 version of section 1473.7 has been held to apply to appellate review of motions to vacate that were pending and not yet final when the amendments became effective. (*Camacho, supra*, 32 Cal.App.5th at p. 1009; *Mejia, supra*, 36 Cal.App.5th at pp. 865–866, 871.)

## DISCUSSION

### I.      Section 1016.5

In 2015, appellant filed a motion to vacate based on section 1016.5, and claimed he never received any immigration advisements at the plea hearing as required by the statute; this motion was denied. Appellant's instant motion for relief was based on both section 1473.7 and the court's alleged violation of section 1016.5 at the plea hearing.

In this appeal, appellant asserts his current section 1473.7 motion should have been granted based on the court's alleged violation of section 1016.5 at the plea hearing. In doing so, appellant raises the same arguments as in his motion filed in 2015: that the trial court violated section 1016.5 at the plea hearing because it failed to advise him that he was pleading to an offense that would make him inadmissible, excludable, and ineligible for adjustment of his status based on the pending visa petition already filed by his father.

As noted by the People, appellant raised these same issues in his motion for relief filed under section 1016.5 in 2015. The superior court denied his motion in 2015 and he

26.

did not file an appeal from that order. An appeal may be brought from the denial of a section 1016.5 motion (*People v. Totari* (2002) 28 Cal.4th 876, 879), and appellant's failure to do so prevents him from raising the identical section 1016.5 issues again as part of his appeal from the denial of his section 1473.7 motion.

Even if we were to address this issue on the merits, the record refutes appellant's claim on this ground. Section 1016.5 "requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense *may result* in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (*People v. Martinez, supra,* 57 Cal.4th at p. 558, italics added, fn. omitted.)

If the court fails to give the section 1016.5 advisement at a plea hearing, "and the defendant shows that conviction of the offense to which he or she pleaded guilty or nolo contendere *may result* in adverse immigration consequences, the court, on the defendant's motion, is required to vacate the judgment and permit the defendant to withdraw his or her plea and enter a plea of not guilty. [Citation.] Relief will be granted, however, only if the defendant establishes prejudice. [Citation.] [P]rejudice is shown if the defendant establishes it was reasonably probable he or she would not have pleaded guilty if properly advised. [Citation.]" (*People v. Martinez, supra*, 57 Cal.4th at p. 558–559, italics added.)

At the plea hearing in 2001, the superior court complied with section 1016.5 and advised appellant that "*if*" he was not a citizen, the Immigration and Naturalization Service "*can* snatch him up … and deport him for this type of offense," and "*if* Immigration decided to, they *could* deport him, refuse him reentry or refuse him the right to become an American citizen…." (Italics added.) Section 1016.5 only requires the court to advise the party about the possibility of deportation, and the advisement at appellant's plea hearing complied with section 1016.5. (*Vivar, supra*, 11 Cal.5th at

27.

p. 533.)  As we will address below, however, the court's compliance with the section 1016.5 advisement about possible immigration consequences may not bar relief under section 1473.7, under certain circumstances, if the defendant pleaded to an offense that would result in mandatory deportation.  (*Vivar, supra*, 11 Cal.5th at pp. 533–534.)

Appellant further argues that at the plea hearing, the court's alleged failure to comply with section 1016.5 made his plea involuntary and unconstitutional in violation of *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122.  The purpose of *Boykin/Tahl,* however, is to ensure that before a criminal defendant enters a plea, the court must inform him of three constitutional rights – the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers – and obtain the defendant's personal waiver of each right.  (*People v. Cross* (2015) 61 Cal.4th 164, 170.)  *Boykin/Tahl* does not support appellant's claim that his waiver of constitutional rights was not knowing, intelligent, and voluntary based on the court's alleged violation of section 1016.5.

## II.  Appellant's Section 1473.7 Motion for Relief

We turn to the merits of appellant's section 1473.7 motion based on the 2019 amendments to the statute, because the amendments represented "a clarification of existing law and therefore appl[y] to nonfinal judgments [denying relief under section 1473.7 motions], including this appeal," and the parties have not disputed this point.  (*Mejia, supra*, 36 Cal.App.5th at p. 865; *Camacho, supra*, 32 Cal.App.5th at pp. 1006–1008.)

"Unlike the *Padilla* rule, section 1473.7 applies retroactively, allowing challenges to pleas entered into before it was adopted.  [Citations.]"  *(People v. Rodriguez, supra*, 68 Cal.App.5th at pp. 309–310.)  The 2019 version of section 1473.7, subdivision (a)(1) states the basis to bring a motion to vacate that is now applicable to this case:

> "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend

against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subds. (a)(1), (e)(4).)

"[T]he 2018 amendment of section 1473.7 'made it easier to retroactively challenge convictions' where the defendant was not properly advised of immigration consequences by removing judicially created 'barriers' to relief. [Citation.] Since the 2018 amendment, courts have adopted a more expansive interpretation of section 1473.7, subdivision (a)(1)." (*People v. Rodriguez, supra*, 68 Cal.App.5th at p. 311.) "Now the trial court may set aside a conviction based on counsel's immigration advisement errors without a 'finding of ineffective assistance of counsel.' [Citation.]" [16]

### A.    *Camacho and Mejia*

We begin with two cases that first interpreted the 2019 version of section 1473.7. In *Camacho, supra*, 36 Cal.App.5th 859, the court held that after the 2019 amendment, a moving party need only show that there were "one or more" errors that "were prejudicial and damaged [his] 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his or her] plea ….' [Citation.]" (*Id*. at p. 1009.) *Camacho* held the moving party's declaration and hearing testimony in that case demonstrated by a preponderance of the evidence his "*own error* in believing that a negotiated plea calling for no time in custody would avoid making him deportable, and in not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States." (*Ibid*.) *Camacho* further held that based on defendant's strong ties to the country from his childhood, family, and

---

[16] As previously noted, appellant asserts his section 1473.7 motion should have been granted based on his original claim of ineffective assistance. We need not address the ineffective assistance claim since our review is based on the 2019 amendments to section 1473.7. (*Camacho, supra*, 32 Cal.App.5th at p. 1009; *Mejia, supra*, 36 Cal.App.5th at pp. 865–866, 871.) In addition, as previously explained, appellant's ineffective assistance arguments are based on *Padilla* and other cases that are inapplicable to his plea.

employment, he demonstrated prejudice by a preponderance of the evidence, because "he would never have entered the plea if he had known that it would render him deportable," and the errors "damaged his ability to meaningfully understand, defend against, or knowingly accept the adverse immigration consequences of the plea," and the trial court should have granted the motion to vacate. (*Id*. at pp. 1011–1012.)

*Mejia* held that "to establish a 'prejudicial error' under [the 2019 version of] section 1473.7, a person need only show by a preponderance of the evidence: (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges." (*Mejia*, *supra*, 36 Cal.App.5th at p. 862.)

*Mejia* agreed with *Camacho*'s analysis of finding error: "[T]he focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error* in … not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.' [Citation.]" (*Mejia, supra*, 36 Cal.App.5th at p. 871.)

*Mejia* further set forth the standard for prejudice:

"[A] 'prejudicial error' occurs under section 1473.7 when there is a *reasonable probability* that the person would not have pleaded guilty – and would have risked going to trial (even if only to figuratively throw a 'Hail Mary') – had the person known that the guilty plea would result in mandatory and dire immigration consequences. [Citation.]

" 'Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea .… [¶] But common sense … recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. [Citation.] When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive.' [Citation.] In a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a

30.

defendant's expressed preferences.' [Citation.]" (*Mejia, supra,* 36 Cal.App.5th at pp. 871–872.)

*Mejia* held the defendant's undisputed hearing testimony in that case established his "own 'error' " within the meaning of section 1473.7 because "he did not 'meaningfully understand' or 'knowingly accept' the mandatory deportation consequences when he pleaded guilty in 1994. [Citation.] [The defendant] said that he would have never pleaded guilty had he known and understood 'that this would harm me in the future.' " (*Mejia*, *supra*, 36 Cal.App.5th at p. 872.)

As for prejudice, *Mejia* found "contemporaneous evidence in the record to substantiate [his] claim that he would not have pleaded guilty had he known about the mandatory and dire immigration ramifications," because he had lived in the country for a substantial period of time with his family, and there were also "lingering questions" about the strength of the evidence to support the charged offenses. (*Mejia, supra*, 36 Cal.App.5th at p. 872.) *Mejia* also found another "contemporaneous substantiation of prejudice" because the defendant entered "a 'straight up' plea directly to the court rather than a negotiated disposition," and he was placed on probation. It was not likely that he would have been sentenced to the maximum prison term if he had been convicted after a trial because he had no criminal record, and it was an unsophisticated crime. (*Id.* at pp. 872–873.)

**B.** *Vivar*

In *Vivar, supra*, 11 Cal.5th 510, the California Supreme Court addressed the 2019 version of section 1473.7, approvingly cited *Camacho* and *Mejia*, and clarified the applicable standard of review. (*Vivar, supra*, 11 Cal.5th at pp. 529, 530–531.)

*Vivar* explained that the Legislature originally enacted section 1473.7 so that defendants "who were unaware of the immigration consequences posed by a plea entered many years earlier[]" could subsequently move to vacate their convictions and obtain relief from imminent immigration orders. (*Vivar, supra*, 11 Cal.5th at p. 523.)

"Section 1473.7 offers a remedy in the form of permission to withdraw a plea. But it's a remedy available only to some: those who have completed their sentences and who suffered a prejudicial error that damaged their ability to meaningfully understand, defend against, or knowingly accept the plea's actual or potential immigration consequences. [Citations.] A moving party demonstrates prejudice by showing that in the absence of the error regarding immigration consequences, it's reasonably probable the moving party would not have entered the plea. Courts should subject the trial court's prejudice finding under this statute to independent review, a standard that heavily weighs trial court factual findings based on the court's own observations, but not trial court findings arising only from a cold record." (*Id.* at pp. 533–534.)

The moving party has the burden of proof by a preponderance of the evidence. (*Vivar, supra*, 11 Cal.5th at p. 517.) *Vivar* explained that after the 2019 amendments, "[a] finding of prejudicial error under this provision may, *but need not*, be based on ineffective assistance of counsel. [Citation.]" (*Id.* at p. 523, italics added.)

"What someone seeking to withdraw a plea under section 1473.7 must show is more than merely an error 'damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the plea. [Citation.] The error must also be 'prejudicial.' [Citation.]" (*Id.* at p. 528.)

*Vivar* further explained that "showing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea *if the defendant had correctly understood its actual or potential immigration consequences.* When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. [Citations.]" (*Vivar, supra*, 11 Cal.5th at pp. 529–530, italics added.)

*Vivar* held that on appeal, the independent standard of review applies and " 'an appellate court exercises its independent judgment to determine whether the facts satisfy

the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent review is *not* the equivalent of de novo review .…" ' [Citation.]" (*Vivar, supra*, 11 Cal.5th at p. 527, italics added in original.) The motion is reviewed independently because of "the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of trial courts and appellate courts to assess that evidence. [Citation.]" (*Ibid*.)

*Vivar* drew a distinction about how certain factual findings are reviewed under this independent standard:

> "In section 1473.7 proceedings, appellate courts should … give particular deference to factual findings based on the trial court's *personal observations of witnesses.* [Citation.] *Where … the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue*; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar, supra*, 11 Cal.5th at pp. 527–528, italics added, fn. omitted.)

*Vivar* applied these standards to review the moving party's motion in that case, and his declaration that he would not have entered his plea if he understood that it would result in his mandatory deportation. *Vivar* held the 2019 version of the statute still required the defendant "corroborate such assertions with ' "objective evidence." ' [Citation.] That's what [the defendant] has done here." (*Vivar, supra*, 11 Cal.5th at p. 530.)

> "Time and again, the record readily conveys how [the defendant] would have considered his immigration status 'the most important part' of his decision to plead. [Citation.] [The defendant] was brought to this country at age six as a lawful resident, and he attended schools, formed a family, and remained here for 40 years. At the time of his plea, he had two children, two grandchildren, and a wife, all of whom are citizens and all of

33.

whom resided in California. By the time he was deported, his wife was undergoing radiation treatment for a thyroid condition. By contrast, [the defendant] had virtually no ties to Mexico, spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat [him] like an outsider.' Trial counsel's recollection and contemporaneous notes reflect that [the defendant] was indeed concerned about the 'consequences' of his plea. All of these constitute contemporaneous objective facts that corroborate [the defendant's] concern about the immigration consequences of his plea options. [Citation.] [¶] … [¶] … In our view, these objective and contemporaneous facts corroborate, in a most convincing way, the statement in [the defendant's] declaration that he 'would never have plead[ed g]uilty' if his attorney had informed him of the plea's consequences. [Citations.]" (*Id.* at pp. 530–531.)

*Vivar* acknowledged the trial court rejected the credibility of the defendant's declaration but held the appellate court should not have deferred to the trial court's factual findings because those findings were "based entirely on a cold record," and again emphasized that "[a]n appellate court should instead review such findings independently where, as here, the factual record consists entirely of written documents." (*Vivar, supra*, 11 Cal.5th at p. 533.)

*Vivar* further held the section 1016.5 advisements in the defendant's plea form, while consistent with the statutory requirements, "*did not mitigate the prejudice from counsel's deficient immigration advice.* What the plea form stated was that deportation was *a possibility*. [Citation.] The problem for [the defendant], though, was that deportation in these circumstances was mandatory – and when he accepted the plea deal, he remained unaware of that crucial fact. [Citation.] In light of [the defendant's] extensive ties to the United States, the generic advisements in the plea form do not undermine our conclusion that he was prejudiced by counsel's failure to inform him that his plea would result in his deportation. [Citations.]" (*Vivar, supra*, 11 Cal.5th at p. 533.)

C. **_Evidence of Appellant's "Own Error"_**

In reviewing the merits of appellant's section 1473.7 motion, the first question is whether appellant satisfied his burden of establishing by a preponderance of the evidence

his own subjective error " 'damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the plea. [Citation.]" (*Vivar, supra*, 11 Cal.5th at pp. 528, 530; § 1473.7, subds. (e)(1), (e)(4); *Mejia, supra*, 36 Cal.App.5th at p. 871; *People v. Rodriguez, supra*, 68 Cal.App.5th at p. 321.) The focus "is the mindset of the defendant and what he or she understood – or didn't understand – at the time the plea was taken, …" (*Mejia, supra*, 36 Cal.App.5th at p. 866.)

As directed by *Vivar*, we conduct an independent review of the motion and are not required to defer to the trial court's findings or rulings, since the entirety of the evidence for all of appellant's postconviction motions was documentary in nature, and the parties never introduced any testimony at the hearings on those motions. (*Vivar, supra*, 11 Cal.5th at pp. 524–525, 528; *People v. Rodriguez, supra*, 68 Cal.App.5th at p. 312.)

While a section 1473.7 motion will not be granted "merely because the [moving party] claims to have misunderstood the consequences of a plea," appellant has met this burden because he consistently stated in his postconvictions declarations that he did not know or understand that by pleading no contest to the charged felony of possession of cocaine, he was going to be convicted of a controlled substance offense under federal immigration law, it would subject him to mandatory deportation as a certainty, and it would also render him inadmissible. (See, e.g., *People v. Alatorre* (2021) 70 Cal.App.5th 757, 770.)

In his declaration in support of his section 1385 motion filed in 2014, appellant declared that when he admitted the probation violation, he did not know he was "giving up virtually all possible immigration relief from deportation," and he would not have admitted the violation if he understood that he was "giving up all possible immigration remedies." Appellant submitted a declaration in support of his section 1016.5 motion for relief in 2015, and stated he "did not know and was not informed that my conviction would cause me to be deported," his attorney did not mention anything about

35.

immigration and what would happen to his status by pleading no contest, and appellant and his attorney did not consider the effect of the conviction on his immigration status because they "never talked about it." Appellant further stated he did not remember seeing, reviewing, or signing a form that explained the immigration consequences of the plea," and he would not have entered the plea if he had known that his plea would result in his mandatory deportation and inadmissibility.

In his declaration filed in 2018 to support the instant section 1473.7 motion for relief, appellant again stated he did not know and was not informed that his conviction would result in his mandatory deportation, and he never saw or signed a document that explained such consequences. Appellant did not recall his attorney telling him there would be any immigration consequences from his conviction, and if they had discussed it, appellant would have told him about the pending visa petition filed by his father.

Appellant declared that his current attorney showed him the transcript of the plea hearing, and he did not recall the court discussing the immigration consequences even in the "generic" way shown in the transcript. Appellant's current attorney advised him that his attorney at the plea hearing, Mr. Rendahl, "discussed immigration issues generally with the judge [at the time of the plea] and Mr. Rendahl said he discussed this with me," but appellant did not recollect any conversations with Mr. Rendahl about his immigration consequences. Appellant declared that if Mr. Rendahl "did tell me anything, it must have been something very generic" and not that he would be subject to mandatory deportation and ineligible for lawful permanent resident status. Appellant stated that he had reviewed the plea transcript and assumed he did not want to contradict his attorney when the court asked if they had discussed immigration consequences. Appellant again declared that if he had known or understood that his plea would result in mandatory deportation and inadmissibility, he would not have entered the plea because of his pending visa petition.

Based on this court's independent review, the entirety of the record does not undermine the credibility of the statements in appellant's postconviction declarations.

The record does not contain a change-of-plea form, or any document signed by appellant at the time of his plea, that contained the section 1016.5 advisement or stated anything about the immigration consequences resulting from pleading to felony possession of cocaine.

Mr. Rendahl, his attorney at the 2001 plea hearing, did not testify at any of the evidentiary hearings on his postconviction motions for relief. He submitted a declaration as part of the instant proceedings, and stated he had "no independent recollection" of his specific conversations with appellant, thus eliminating any direct evidence to contradict appellant's specific claims. Mr. Rendahl cited his usual practice at the time – to advise clients "that their plea may have immigration consequences and this case can cause you to be deported, however it is unknown if you will actually be deported," which is consistent with the section 1016.5 advisement. Mr. Rendahl further stated it was also his practice to provide clients with immigration consequences of their plea "in relation to their status that they informed me of," from undocumented up to a resident alien with a green card and in the process of seeking to become a citizen.

In contrast to Mr. Rendahl's lack of independent recollection, appellant stated that he never discussed his specific immigration consequences with his attorney prior to the plea, he never knew he would be subject to mandatory deportation and inadmissibility as a result of his conviction, and he would have remembered such a conversation because of the impact on his pending visa petition. (See, e.g., *Camacho, supra*, 32 Cal.App.5th at pp. 1002–1003 [reliance on usual practices insufficient to refute moving party's specific declaration].)

### 1.     The Trial Court's Factual Findings

The People assert we must defer to the trial court's factual findings when it denied his section 1473.7 motion, and its rejection of appellant's credibility in his 2018 declaration compared to the other declarations he filed in support of his postconviction motions about whether counsel advised him, and he understood the mandatory

37.

immigration consequences of his plea. As explained in *Vivar*, however, where the facts "*derive entirely from written declarations and other documents*," the reviewing court must "decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar, supra*, 11 Cal.5th at pp. 527–528, italics added.) All of appellant's postconviction motions for relief, including the instant section 1473.7 motion, were exclusively based on documentary evidence and declarations, and no witnesses were called or testified at any of the hearings on these motions. We are thus not bound by the trial court's factual findings when it denied his section 1473.7 motion.

In supplemental briefing, the People acknowledge *Vivar's* holding about the independent review standard but assert this court must defer to "factual findings by the original plea court that did take evidence at the time of the plea," because those findings undermine the credibility of appellant's declaration in support of his section 1473.7 motion. The People argue that appellant's plea hearing in 2001 was "an evidentiary hearing" and entitled to deference.

> "The trial court questioned appellant and his counsel, viewing and listening to determine the credibility of their responses as needed to make a finding that appellant understood the consequences of his plea. Absent such a finding, the court could not have accepted the plea. This factfinding by the plea court is not subject to revisiting merely because appellant was willing to make contrary assertions years later. Rather, those facts are binding, and, in light of those facts, appellants' motion was insufficiently credible to establish prejudicial error."

The People further argue that once the court accepted appellant's plea in 2001, it "necessarily found appellant credible in his agreement that counsel did discuss with him the 'possibilities' the court had just recited that could arise 'because of the conviction of this.' Thus, here, when appellant filed a motion that broadly alleged under oath that his counsel did not discuss those possibilities with him before he pled, *those allegations were to be rejected on their face as contrary to the facts established by the factfinder – i.e., the trial court, at the time of the plea.*" (Italics added.)

There are several problems with the People's arguments about deference to these alleged factual findings, both in the abstract and as applied to this case. First, the People's premise is that in reviewing a moving party's section 1473.7 motion, the trial court's original acceptance of the moving party's plea bars relief as long as the court gave the section 1016.5 advisement at the plea hearing. However, *Vivar* held that compliance with the generic section 1016.5 advisement, which only addresses the *possibility* of deportation, may be insufficient to bar relief under section 1473.7 if the moving party pleaded to an offense that was going to result in his mandatory deportation. (*Vivar*, *supra*, 11 Cal.5th at p. 533.)

In addition, the People's arguments undermines the intent behind the enactment and subsequent amendment of section 1473.7: "Because the prospect of deportation 'is an integral part,' and often even 'the most important part,' of a noncitizen defendant's calculus in responding to certain criminal charges [citations], both the Legislature and the courts have sought to ensure … defendants receive clear and accurate advice about the impact of criminal convictions on their immigration status, along with effective remedies when such advice is deficient. [Citations.]" (*Vivar, supra*, 11 Cal.5th at p. 516.) "The Legislature instructed courts to interpret section 1473.7 'consistent with the findings and declarations made in section 1016.2 of the Penal Code' [citation] – which in turn articulated a purpose 'to *codify* … related California case law and to encourage the growth of such case law in furtherance of justice' [citation]." (*Id.* at pp. 525–526.)

As applied to this case, the People's claim about implied factual findings at the plea hearing would be meritorious if the plea transcript showed that the court advised appellant that he was going to be subject to mandatory deportation if he pleaded to the charged felony offense, and appellant and his attorney replied that they had discussed the mandatory immigration consequences. (See, e.g., *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1114–1115 [appellant signed form acknowledging his no-contest plea " 'will, now or later, result in … deportation, exclusion from admission or

readmission' "].) In this case, however, the plea transcript shows that, at most, appellant was aware of the *possible* immigration consequences, as required by section 1016.5:

> "THE COURT: *[I]f he's an alien and not a citizen* and he's out on the electronic monitor you know Immigration and Naturalization *can snatch him up … off the street* and deport him for this type of offense even if he's on the electronic monitor because he's not in custody, physical custody. I think you need to warn him that *if Immigration decided to*, they could deport him, refuse him reentry or refuse him the right to become an American citizen because of this.

> "Mr. RENDAHL: *Yes, I did discuss that with him.*

> "THE COURT: He understands *those possibilities*?

> "[APPELLANT]: *Yes.*" (Italics added.)

While the court complied with section 1016.5 at the plea hearing in 2001, the responses from appellant and his attorney indicated that they had discussed *possible* immigration consequences – that "*[i]f*" he was not a citizen and "*if*" the Immigration and Naturalization Service decided to, they "*could*" deport him, refuse him reentry, or refuse him the right to become a citizen – and appellant was aware of these *possible* consequences. The court's compliance with section 1016.5 at the plea hearing, and acceptance of appellant's plea, did not constitute implied factual findings that appellant was subjectively aware of the *actual* mandatory deportation consequences of his plea to an offense relating to a controlled substance.

### D. *Prejudice*

The second question in evaluating appellant's section 1473.7 motion is whether appellant was prejudiced by his own subjective error about the mandatory immigration consequences of his plea. (*Vivar, supra,* 11 Cal.5th at p. 523.) In denying appellant's section 1473.7 motion and rejecting his credibility and the ineffective assistance claim, the superior court did not reach the question of prejudice. Instead, as explained above, the court found appellant's attorney was not ineffective since appellant received the

section 1016.5 advisement about the possible consequences at his plea hearing, and appellant and his attorney acknowledged they had discussed those issues.

"[S]howing prejudicial error under [the 2019 version of] section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. [Citations.]" (*Vivar, supra*, 11 Cal.5th at pp. 529–530.) "The focus [is] on 'what the defendant would have done, not whether the defendant's decision would have led to a more favorable result.' " (*Id.* at pp. 528–529.) In making this assessment, we consider the totality of the circumstances. (*Id.* at p. 529.)

A " 'prejudicial error' occurs under [the 2019 version] of section 1473.7 when there is a *reasonable probability* that the person would not have pleaded guilty – and would have risked going to trial (even if only to figuratively through a ' "Hail Mary" ') – had the person known that the guilty plea would result in mandatory and dire immigration consequences. [Citation.]" (*Mejia, supra*, 36 Cal.App.5th at p. 871, quoting *Lee v. United States* (2017) __ U.S. __, [137 S.Ct. 1958, 1967]; *Camacho, supra*, 32 Cal.App.5th at p. 1010.)

In evaluating the record for prejudice as required by the 2019 amendments, the declarations filed in support of appellant's section 1473.7 motion raise the strong inference that his subjective error about the mandatory immigration consequences of his plea was prejudicial. At the time of his section 1473.7 motion in 2018, appellant was 41 years old, and declared he had lived in the United States since 1996. Appellant never

stated his birthdate, but his declaration indicates he was born in or about 1977, which meant he was 19 years old when he came to the United States. He married a citizen in 2005, they had two children who were also citizens, and his "whole life is here." A declaration from appellant's employment supervisor stated that he had worked for the same construction company for five years, and he was hardworking, reliable, and responsible; declarations from other family members stated he was the main source of their income.

More importantly, appellant and his current immigration attorney declared there was a visa petition that was pending at the time of his plea in 2001 that essentially was nullified when he pleaded to the controlled substance offense. Appellant declared that he did not recall discussing the immigration consequences of his plea with his attorney because "I would have informed him that *I currently had an approved visa petition filed by my lawful permanent resident father that I planned to use to apply for lawful permanent resident status in the future.*" Appellant declared that if his attorney told him that "*the plea would make me ineligible for lawful permanent resident status, which I planned to pursue through the petition my father filed, I would have not taken the plea.*" (Italics added.) If he "understood that the plea would make me ineligible to apply for lawful permanent resident status, I would certainly have asked more questions *and explained my father had petitioned for me*. I would not have taken the plea if I understood it made me ineligible for lawful permanent resident status." Appellant thus effectively that he did not tell his attorney about the pending visa petition at the time of the plea, and they never discussed the mandatory deportation consequences.

The declaration from appellant's immigration attorney provided further evidence about this "pending" petition. She stated that at the time of his plea, appellant was "the derivative beneficiary" of a visa petition filed on May 21, 1992. "[A]t the time he entered the plea, [appellant] had *an approved visa petition* filed by his then-lawful permanent resident father, which had already been *pending for almost 10 years and*

*would have rendered him eligible for lawful permanent resident status as soon as the priority date become current,* so long as he was not inadmissible." (Italics added.)

The entirety of the record suggests there was a reasonable possibility that appellant would not have pleaded to the charged offense if he had been aware of the mandatory deportation consequences, so that his subjective error about the mandatory deportation consequences of his plea would be prejudicial. There is an important evidentiary gap, however, to establish the inherent prejudice in this case. While the declaration from appellant's immigration attorney addressed the *existence* of the visa petition, she did not explain the *meaning* of that petition as being "approved" and "pending," what that meant in 2001, why the petition had been pending for 10 years, and whether appellant knew about these circumstances at the time of his plea. The instant record does not contain the visa petition, any documentary evidence about the specific status of that petition at the time appellant entered his plea in 2001, whether appellant knew about the existence and status of that petition at the time he entered his plea in 2001, or whether it was it entirely speculative that a pending visa petition was going to be granted.

Due to the retroactive amendments to section 1473.7, appellant merits the opportunity to amend his motion to attempt to make a showing that he is entitled to relief due to his prejudicial subjective error, based on the existence and status of the visa petition at the time of his plea, and appellant's knowledge about the existence and status of that petition in 2001. (See *Camacho, supra*, 32 Cal.App.5th at p. 1009.) Therefore, we will remand the matter for that limited purpose.

In sum, we are affirming the trial court's findings that appellant's section 1473.7 motion lacked merit based on his claims under section 1016.5 and ineffective assistance of counsel. However, we are conditionally reversing the order denying the motion and remanding the matter to allow him to amend the motion and provide additional evidence to meet his burden of proving by a preponderance of the evidence his prejudicial error in not meaningfully understanding or knowingly accepting the actual immigration

43.

consequences of his plea. The trial court may then reconsider the motion under the legal framework as set forth in the 2019 version of section 1473.7, as set forth in *Vivar, Camacho, and Mejia*. If appellant declines to amend his motion within 30 days, the trial court shall reinstate the order denying his section 1473.7 motion.

## DISPOSITION

The trial court's order denying appellant's section 1473.7 for relief is conditionally reversed and the matter remanded for further appropriate proceedings.


POOCHIGIAN, ACTING P. J.

WE CONCUR:


DETJEN, J.


SNAUFFER, J.

44.